### PEOPLE v. DWYER.

(City Magistrates' Court of New York City. August, 1911.)

1. MUNICIPAL CORPORATIONS (§ 592*)—ORDINANCES—SPEED—REGULATION.
   New York City Ordinances (1911 Ed.) p. 109, c. 12, § 454, providing that vehicles shall not exceed a speed of 8 miles, except that in portions of the city not closely built up a speed of 15 miles an hour may be maintained, has not been invalidated by the enactment of the Motor Vehicle Law and its amendments (originally Laws 1904, c. 538, subsequently Laws 1909, c. 30, now Consol. Laws 1909, c. 25), and is now in force.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1311–1314; Dec. Dig. § 592.*]

2. MUNICIPAL CORPORATIONS (§ 592*)—ORDINANCES—SPEED REGULATION.
   An ordinance of the city of New York is enforceable, even though there is no proof of the existence of signs reading "Slow down to ——— miles," such as are contemplated by the provisions of Highway Law

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(Consol. Laws 1909, c. 25) § 299, provided the speed limitation prescribed by the ordinance is not greater than that fixed by the general law.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1311–1314; Dec. Dig. § 592.*]

John Dwyer was charged with unlawfully operating an automobile at an excessive rate of speed, in violation of a city ordinance, and he moves to dismiss the complaint. Motion to dismiss denied.

Assistant District Attorney Breen, for the People.

Gerard J. Cuoco and J. Henry Rosenback, for defendant.

FRESCHI, City Magistrate. The defendant is charged with unlawfully operating an automobile at and along Central Park West, a highway in the city of New York, on August 7, 1911, at the rate of 25 miles an hour, in violation of chapter 12, § 454, p. 109 (1911 Ed.) of the Ordinances of the City of New York, which provides as follows:

"Sec. 454. Speed of Vehicles.—The following rates of speed through the streets of the city shall not be exceeded, that is, eight miles an hour by bicycles, tricycles, velocipedes and motor vehicles, however propelled, or by passenger or other vehicles drawn by horses or other animals, except that in portions of the city not built up, where the buildings are at least 100 feet apart, a speed of fifteen miles an hour may be maintained. (Id. art. 11, sec. 1)."

[1] The facts charged in the complaint are not disputed by the defendant, who moves to dismiss on the ground that this court has no jurisdiction to try and determine the issue. In this connection defendant's counsel contends that the city ordinance is not operative as law, and that it has been invalidated by the enactment of the Motor Vehicle Law, which forms part of the Highway Law in our Consolidated Laws of the state. He further contends that a criminal prosecution against the defendant can only be had upon proof of driving at a rate of speed which is not deemed careful and prudent under the state law.

This contention, if correct, would entitle the defendant to an examination in this court, and, if he were held, a trial in the Court of Special Sessions. Of course, the degree of punishment in the event of a conviction is different, as is pointed out in the Hainer Case, below. Then, again, a conviction under the Motor Vehicle Law becomes a matter of record, which may be used against an offender in subsequent prosecutions and in determining the punishment, whereas the ordinance makes no provision for such record. A fine of $10 is the maximum punishment for violating the ordinance, irrespective of the number of convictions against the offender. The history of the legislation affecting the point of the case may be interesting.

The ordinance in question, the violation of which is here charged, was ordained by the board of aldermen of the city of New York prior to 1904, approved by the mayor, and became operative by such approval. This ordinance has been and is now in force, notwithstanding the enactment of the Motor Vehicle Law by the Legislature in 1904 and the amendatory acts thereof.

The Motor Vehicle Law has its source in the legislation of chapter 538 of the Laws of 1904, which was subsequently made a part of the Highway Law (Laws 1909, c. 30), which is now chapter 25 of the Consolidated Laws; article 11 relating particularly to motor vehicles. A comparison of the context of the original section of the law governing speed permitted in the use of motor vehicles and with relation to ordinances prohibited with that of the amendments thereto will aid in ascertaining the legislative intent by the amendment of 1910.

In 1904 the Legislature enacted in this regard as follows:

"Section 3, Subdivision 1. Speed permitted.—No person shall operate a motor vehicle on a public highway at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the highway or so as to endanger the life or limb of any person, or the safety of any property, or in any event on any public highway where the territory contiguous thereto is closely built up, at a greater rate than one mile in six minutes, or elsewhere in a city or village at a greater rate than one mile in four minutes, or elsewhere in a city or village at a greater rate than one mile in three minutes, subject, however, to the other provisions of this act. * * *

"Subdivision 3. Local Ordinances Prohibited.—Subject to the provisions of this act, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring of any owner or operator of a motor vehicle any license or permit to use the public highways or excluding or prohibiting any motor vehicles whose owner has complied with section two of this act from the free use of such highways, except such driveway, speedway or road as has been or may be expressly set apart by law for the exclusive use of horses and light carriages, or except as herein provided, in any way affecting the registration or numbering of motor vehicles or prescribing a slower rate of speed than herein specified at which such vehicles may be operated, or the use of the public highways, contrary to or inconsistent with the provisions of this act; and all such ordinances, rules or regulations now in force are hereby declared to be of no validity or effect: Provided, however, that the local authorities of cities and incorporated villages may limit by ordinance, rule or regulation hereafter adopted the speed of motor vehicles on the public highways, on condition that such ordinance, rule or regulation shall also fix the same speed limitation for all other vehicles, such speed limitation not to be in any case less than one mile in six minutes in incorporated villages, and on further condition that such city or village shall also have placed conspicuously on each main public highway where the city or village line crosses the same and on every main highway where the rate of speed changes signs of sufficient size to be easily readable by a person using the highway, bearing the words 'Slow down to ———— miles' (the rate being inserted), and also an arrow pointing in the direction where the speed is to be reduced or changed, and also on further condition that such ordinance, rule or regulation shall fix the penalties for violation thereof similar to and no greater than those fixed by such local authorities for violations of speed limitation by any other vehicles than motor vehicles, which penalties shall, during the existence of the ordinance, rule or regulation, supersede those specified in section six of this act: And provided further, that nothing in this act contained shall be construed as limiting the power of local authorities to make, enforce and maintain further ordinances, rules or regulations affecting motor vehicles which are offered to the public for hire."

It seems that the Legislature intended by this enactment to establish uniformity in matters of speed of motor cars throughout the state. An analysis and close reading of this section will show that no exception was made as to cities of the first class, as has been done in the later law in the amendment of 1910. Laws 1910, c. 374.

Under the Motor Vehicle Law of 1904, the Court of Appeals was

called upon and did decide the case of People ex rel. Hainer v. Keeper of the Prison, etc., 190 N. Y. 315, 83 N. E. 44. In the Hainer Case, supra, the defendant was charged with a violation of subdivision 1 of section 3 of chapter 538 of the Laws of 1904 (Motor Vehicle Law), and was arraigned before a city magistrate in New York. The defendant's counsel, in offering in evidence sections 554, 556, and 557 of the Ordinances of the City of New York, moved to dismiss the complaint, and after the denial of this motion the defendant was held for trial before the Court of Special Sessions. A review of this law was had in a proceeding instituted by the defendant for a writ of habeas corpus, asking his release from custody on the ground that the offense with which he was charged was cognizable only under the city ordinance by a magistrate, and not under the Motor Vehicle Law by the Court of Special Sessions. The Court of Appeals, through Mr. Justice Willard Bartlett writing (190 N. Y. at page 317, 83 N. E. at page 44), stated the point in the case in this way:

"The question in this case is whether a person driving an automobile at the rate of 18 miles an hour on the street in the city of New York, where the territory contiguous thereto is closely built up, is punishable under the Motor Vehicle Law, or only under the city ordinance relative to the speed of vehicles within the municipal limits. The difference is quite material. Under the Motor Vehicle Law the punishment may be a fine of $100 for the first offense, a fine of $100 or imprisonment for 30 days or both for a second offense, and a fine of $250 and imprisonment for 30 days for a third or subsequent offense. On the other hand, under the city ordinances the penalty cannot exceed a fine of $10 or imprisonment for not more than 10 days in default of payment of such fine."

The court, in summarizing the decision of the lower court, gives this view of its construction of the statute (1904) under consideration. At 190 N. Y. 320, 83 N. E. 44, the court says:

"The only power of a municipality under the statute to regulate the speed of motor vehicles by ordinance is to prescribe a lower rate than that permitted by the general law. It may fix penalties for driving a motor vehicle at a speed in excess of such lower rate, and any person driving a motor vehicle at a speed in excess of such lower rate, but not in excess of the speed limitation prescribed by the general law, is liable to prosecution and punishment under the ordinance only. But any person who violates the speed limitations prescribed in the general law itself, even though such violation occurs within the limitation of the municipality, remains liable to prosecution and punishment under the provisions of the general law."

The court further makes this observation:

"The power conferred upon the local authorities of cities and incorporated villages to enact ordinances in regard to the speed of automobiles is not a general power to prescribe the rate at which such vehicles may be propelled, but is a power to limit the speed. * * * For example, Motor Vehicle Law permits a speed of 10 miles an hour in built-up portions of New York City. The speed under the ordinance cannot exceed 8 miles an hour. Under the construction suggested, one who drove his automobile over 8 miles, but less than 10 miles, an hour would be punishable under the ordinance (assuming that the proper signs had been put up), while if he exceeded 10 miles an hour he would render himself liable to the penalties provided by the Motor Vehicle Law."

By the enactment of the Consolidated Laws in 1909, section 3, subd. 1, above quoted, was renumbered and made section 291 of the High-

way Law, supra, and subdivision 3 of the same section quoted became section 299 thereof. In substance and effect no change or modification was made until the legislation of 1910, which is the so-called Callan Law, now under consideration, and which counsel for the defendant urges has superseded the local ordinance. The law on the speed permitted has by virtue of Laws 1910, c. 374, become section 287 of the Highway Law, and the provisions affecting local ordinances prohibited are now to be found in section 288 thereof.

Section 287 of the Highway Law, now in force, provides:

"Speed Permitted.—Every person operating a motor vehicle on the public highway of this state shall drive the same in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person, provided that a rate of speed in excess of thirty miles an hour for a distance of one-fourth of a mile shall be presumptive evidence of driving at a rate of speed which is not careful and prudent."

By section 288, local authorities, it was provided,

"shall not have power to pass, enforce or maintain any ordinance, rule or regulation respecting motor vehicles or their speed * * * the use of the public highways; and no ordinance, rule or regulation contrary to or in any wise inconsistent with the provisions of this article now in force or hereafter enacted shall have any effect: Provided, however, that nothing in this article contained shall impair the validity or effect of any ordinance regulating the speed of motor vehicles or of any traffic regulations with regard to the operation of motor vehicles heretofore or hereafter made, adopted or prescribed pursuant to law in any city of the first class.".

It is to be noted that this is the first legislative expression with relation to the validity of ordinances affecting cities of the first class. It seems plain that cities of the first class were to be excluded from the operation of the Highway Law relative to motor vehicles where such cities had ordinances dealing with the regulation of speed. I am of the opinion that city ordinances, whether they meet with our city needs or not, make for the safety and protection of all those who have occasion to use the public highways, and are valid and enforceable.

It is quite clear that the Legislature did not intend to nullify existing ordinances in cities of the first class, among which New York is counted. To this extent the principle of "home rule" was observed, and such cities were left free to enforce their existing ordinances, which do not conflict with the state law, and the Legislature seems to have reserved to these cities the power to legislate as in that law indicated. I cannot take the view that the city ordinances regulating speed of the motor vehicles or any traffic regulations have been superseded by the state law.

In the Hanier Case, supra, the court plainly makes the existence of signs and the proof thereof a condition precedent to a conviction, and holds that the ordinance cannot become effective until signs have been erected which notify all drivers upon entering the limits of the municipality that they are required to lessen their speed to the rate established by the ordinance. This case was decided in December, 1907, under the law of 1904; but since a modification has been made by the more recent law.

The 1910 statute, after excluding cities of the first class, which have ordinances affecting the speed of motor vehicles, from the operation of the state law in that regard, provided further—and to this I attach a great deal of significance—that local authorities of "other cities and incorporated villages" may limit by ordinance the speed of motor vehicles on the public highways, such speed limitation not to be in any case less than one mile in four minutes and the maintenance of a greater rate of speed for one-eighth of a mile shall be presumptive evidence of driving at a rate of speed which is not careful and prudent, and on further condition that each city or village shall have placed conspicuously on each main public highway, where the city or village line crosses the same, and on every main highway where the rate of speed changes, signs of sufficient size to be easily readable by a person using the highway bearing the words: "City of ————. Slow down to ———— miles" (the rate being inserted).

Had the Legislature intended that this "further condition" applied to the cities of the first class, it certainly would have included it in the sentence relating to them, rather than separate it from the words "cities of the first class" by a semicolon and make it a qualifying condition in that portion of the compound sentence which deals with other cities and incorporated villages.

[2] An ordinance in the city of New York is enforceable, even though there be no proof of the existence of signs such as are contemplated by the provisions of the Highway Law, provided that the speed limitation prescribed is not greater than that fixed by the general law. If the contention of the attorney for the defendant is to be upheld, thousands and thousands of automobiles could run through our city streets at a breakneck pace of 29 and a fraction miles an hour, creating havoc, stopping all other traffic, and endangering life on all hands, thereby making the highways places of peril and forcing people to remain at home. Aëroplane transit would be the only safe means of travel, if that can be termed safe. On the other hand, while the present city ordinance limiting speed to eight miles an hour is legal and binding on the community, it is impractical and works hardship, in view of our present needs and conditions in sections of the city where there is no congestion. It is for the people of this city to have their municipal and local legislative body change this, if public sentiment demands.

The Callan Law and the city ordinance do not conflict. They are both enforceable in the city of New York. Under the Court of Appeals decision in the Hainer Case, an ordinance that fixes the speed limit lower in rate than that under the general law is enforceable, provided that the violation which occurs in a municipality does not charge a greater rate of speed than 30 miles an hour. If the speed is greater than 30 miles an hour, as fixed by the state law, then the violation must be punishable under the Callan Law. In any event, reckless driving at any speed that imperils life or liberty should be punished.

Defendant's motion to dismiss the complaint is denied, and I find the defendant guilty.